UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

MICHELLE LEIBOLD,

    Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

3:18-CV-00209 JWS

ORDER AND OPINION

[Re: Motion at docket 13 ]

# I. MOTION PRESENTED

At docket 13, Defendant State Farm Mutual Automobile Insurance Company (State Farm) filed a motion for Partial Summary Judgment in which it seeks dismissal of the bad faith claim against it or, alternatively, seeks bifurcation of the bad faith claim from other claims in the complaint. Plaintiff Michelle Leibold (Leibold) responds at docket 19. State Farm replies at docket 20. Oral argument was not requested and would not be of assistance to the court.

# II. BACKGROUND

On June 1, 2016, Leibold was involved in a three-car accident in Anchorage, Alaska. Leibold was hit from behind and pushed into the vehicle in front of her. Leibold was insured by State Farm and had an auto policy with Underinsured Motorist/Uninsured Motorist (UIM) Coverage of $100,000 and Medical Payments Coverage of $25,000. Following the accident, Leibold sought and received Medical

Payments Coverage under her policy for injuries to her back, neck, left knee, and right shoulder, as well as for headaches. She continued to receive treatment for residual neck and shoulder injuries throughout 2017 which her State Farm policy covered. In total, at the time of the parties' briefing, State Farm had paid $19,203.41 for Leibold's medical treatment and had pre-approved medical expenses up to the policy's limit of $25,000.

In May of 2018, Leibold reached a tentative agreement with USAA, the insurer of the driver who had caused Leibold's car accident, whereby USAA offered to pay the liability limit of $50,000 under the driver's policy. In order to finalize the agreement, Leibold needed to obtain a medical payments lien waiver from State Farm to ensure that State Farm would not seek to recoup the medical payments already made under Leibold's State Farm policy. Leibold believed State Farm would provide the waiver because USAA's payment $50,000—the upper limit of the policy—was not enough to cover her alleged damages and make her whole. She believed that her past and future damages totaled $150,000. She intended to recover the remainder of her damages from her State Farm UIM coverage.

Leibold, through her counsel, informed State Farm about the proposed USAA settlement. She asked State Farm for the necessary waiver and stated her intention to file a UIM claim for the remainder of her damages. On August 7, 2018, after a few months of communications between State Farm representatives and Leibold's counsel, State Farm formally declined to issue a waiver, stating that it did not have information to prove that the USAA settlement failed to make her whole.

Leibold filed this lawsuit against State Farm on August 14, 2018, claiming that State Farm's denial was made in bad faith. Two days after the complaint was filed, State Farm proposed to close Leibold's UIM claim for $5,000, explaining that it calculated her total past and future damages to be about $74,000 and therefore, between the $19,000 already paid plus the $50,000 from USAA, an additional $5,000 from her UIM coverage would make her whole. State Farm's proposal to pay $5,000, in

addition to what it had already paid for her medical care and what Leibold would receive from USAA, effectively waived any medical payment claim lien it had previously asserted. That is, State Farm's calculations and ultimate offer conveyed its intent not to recoup past medical payments. Leibold asserts that this after-the-fact proposal supports her bad faith claim against State Farm, arguing that its post-complaint offer demonstrates that State Farm "tr[ied] to leverage waiver of the [medical payment claim] in exchange for closure of the plaintiff's UIM . . . claim."[1]

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to

---

[1] Doc. 19 at p. 5.

[2] Fed. R. Civ. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6] *Id.* at 323.

-3-

material fact.[7]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[9] However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

## IV.  DISCUSSION

**A.     Request for Summary Judgment on the Bad Faith Claim**

Leibold alleges that State Farm's handling and denial of her request for a medical payments lien waiver constitutes a breach of the duty of good faith and fair dealing. She alleges that State Farm delayed its response to her request for a waiver and that State Farm then denied her request without an investigation into her assertion that the USAA settlement failed to make her whole and without a reasonable basis.  Leibold alleges State Farm's denial of her request for a waiver was used to compel her to resolve her UIM claim on terms more favorable to State Farm.

Alaska recognizes a cause of action against insurers for a breach of the duty of good faith and fair dealing.[11]  "Although [the Alaska Supreme Court has] declined to define the elements of the tort of bad faith in an insurance contract, [its] precedent makes clear that the element of breach at least requires the insured to show that the

---

[7]*Id.* at 323-25.

[8]*Anderson,* 477 U.S. at 248-49.

[9]*Id.* at 255.

[10]*Id.* at 248-49.

[11]*State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1156 (Alaska 1989).

-4-

insurer's actions were objectively unreasonable under the circumstances."[12] To prove bad faith, the insured must show that the insurer's delay or denial of a claim was "made without a reasonable basis."[13] While an insurer does not act in bad faith simply by challenging a debatable claim, it must still act reasonably in processing the claim.[14] An insurer's violations of Alaska's Unfair Claim Settlement Practices Act does not require a finding of bad faith, but conduct that is described in that statute—for example, failure to acknowledge and act promptly upon communications regarding a claim, refusing to pay a claim without a reasonable investigation of all of the available information and without an explanation of the basis for the denial of the claim—could constitute evidence of unreasonableness on the part of an insurer.[15] Summary judgement in favor of the insurer on a bad faith claim is only appropriate if the insurer "establishes that no reasonable jury could regard its conduct as unreasonable."[16]

In support of its motion for summary judgment, State Farm relies on its communications with Leibold's counsel and some file notes. The letters between State Farm and Leibold's counsel began on May 28, 2018. Leibold's counsel wrote State Farm to inform it of the tentative agreement with USAA and to ask for the necessary waiver so USAA could pay out the $50,000. Counsel also indicated that he was seeking additional payment from State Farm under Leibold's UIM coverage. On June 5, a State Farm subrogation department representative wrote a letter to Leibold's counsel and stated that she would not waive the medical payments lien and would pursue

---

[12]*Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014)

[13]*Hillman v. Nationwide Mut. Fire. Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993).

[14]*Allen v. State Farm Mut. Auto. Ins. Co.*, No. 3:15-cv-0019, 2018 WL 1474526, at *5 (D. Alaska Mar. 26, 2018).

[15]*Id.*; AS 21.36.125(a).

[16]*Hillman*, 855 P.2d at 1325.

subrogation.  There was no explanation provided and the letter did not request any additional information.

On June 13, 2018, Leibold's counsel faxed a letter asking for a more direct response to his initial demand letter.  On June 14, a State Farm UIM claim specialist sent a letter to Leibold's counsel requesting information needed to process the UIM claim but said nothing about the waiver.  Subsequent letters demonstrate that Leibold's counsel had talked to someone at State Farm who mentioned that he should have received a letter dated June 11, 2018, from Laura Perales, a State Farm representative in the medical payments coverage department, waiving State Farm's right to reimbursement.  Counsel then talked to Ms. Perales who stated that the letter had been written in error and destroyed.  Ms. Perales alleges that she explicitly told counsel that State Farm was still pursuing subrogation until it had more information to help it determine whether Leibold would be made whole with the addition of the $50,000.  A letter from Leibold's counsel indicates that Ms. Perales agreed to talk to the assigned UIM claim adjuster and respond to Leibold's waiver request.  Subsequent letters, wherein Ms. Perales asks Leibold's counsel about the status of Leibold's UIM claim, suggest that Ms. Perales did not in fact communicate with her colleague in the UIM department.

Then, on July 2, 2018, State Farm faxed Ms. Perales' June 11, 2018 letter that waived State Farm's intention to seek reimbursement for Leibold's medical payments, but on July 16, Leibold's counsel received a different letter from her asking for the total amount of medical bills incurred by Leibold.  Counsel faxed a response on July 30, pointing out State Farm's confusing communications and noting the failure to provide the waiver was preventing Leibold from receiving her USAA recovery.  Ms. Perales apologized for the confusion and asked for information about Leibold's treatment. Counsel followed up by forwarding the letter and information he had sent to USAA. That letter indicated Leibold was being treated for a chronic neck and shoulder injury and calculated what her future non-economic and medical damages would be as a

result of her chronic condition. On August 7, 2018, State Farm issued a letter formally denying the waiver request based on "information we currently have."[17]

These communications between State Farm and Leibold's counsel do not support State Farm's request for summary judgment. Rather, taking these letters in the light most favorable to Leibold, they raise an issue of fact as to the reasonableness of State Farm's evaluation of Leibold's waiver request. The letters could reasonably be viewed as unresponsive and provide support for her position that State Farm was delaying action on her request for a waiver. Leibold received letters from different departments and different people saying different things. The letters could be viewed as not adequately communicating to Leibold the problems it was having processesing her request and never stated a reason for State Farm's denial.

The letters also provide support for Leibold's argument that State Farm did not make an adequate effort to evaluate her assertion that USAA's payout would not make her whole. While State Farm made some general inquiries for information and asked Leibold for "the total amount of medical bills incurred," such a request could be viewed by a jury as unreasonable given that State Farm's medical payments coverage department had been receiving and paying for Leibold's medical bills through 2017 and therefore already possessed the requested information. Moreover, the file notes show that State Farm knew about her residual neck and shoulder injuries that required ongoing treatment and were aware that as of November 2017, her doctors attributed her residual injuries to the June 1, 2016 accident.[18]

While the medical billing information State Farm possessed may have been insufficient to resolve the waiver issue, the evidence could support a finding that State Farm failed to make adequate efforts to gather what information was in fact needed and to move forward with its evaluation of Leibold's claim that her injuries were chronic and

---

[17]Doc. 14-12.

[18]Doc. 19-2 at p. 2.

treatment costs would far exceed the USAA payout.  There is no evidence it gathered records or sought more information about her treatment from medical providers, despite the fact that State Farm possessed knowledge about who Leibold's doctors were and where she was being treated.  In the letters denying Leibold's request for a medical payments claim waiver, State Farm did not provide any explanation for its decision.  The lack of any specific justification lends support to Leibold's argument that it did not conduct a full evaluation of Leibold's damages.

In its reply, State Farm points to the fact that it reasonably believed that the $50,000 USAA settlement could cover Leibold's injuries given that her treatment had up to that point only cost $19,000 and it had not yet received any medical bills from 2018. However, there is no evidence in the record making it clear to State Farm that Leibold's treatment was in fact complete; instead, there is evidence in the record that State Farm knew Leibold had residual injuries attributed to the accident.  Additionally, Leibold made clear to State Farm that her injuries and treatment were ongoing.  This evidence, when viewed in favor of Leibold, creates an issue of fact as to whether it was reasonable to simply assume without conducting an investigation that $50,000 would cover Leibold's total damages despite the assertion of chronic injury.

In support of its position, State Farm attaches to its reply brief a physical therapy order from October 2016.  The order notes that on July 25, 2016, about two months after the car accident, Leibold fell from a ladder and down some stairs.  She landed on her low back and hip area and complained of pain in her arms, neck, back, and buttocks.  State Farm appears to argue that this was part of the reason it questioned the damages Leibold sustained as a result of the car accident.  There is no evidence in State Farm's file notes that this medical order was relied upon in its initial denial of the waiver or that State Farm communicated this reason to Leibold.  Moreover, State Farm's evidence must be weighed against evidence that as of 2017 "all providers" were attributing Leibold's lingering neck and shoulder injuries to the car accident, which

occurred before the fall.[19] The court therefore cannot conclude that the physical therapy order precludes a jury from finding that State Farm acted unreasonably in responding to Leibold's waiver request.

State Farm also takes issue with Leibold's argument that it should have simply presumed Leibold's damages exceeded USAA's settlement amount simply because USAA offered the full policy limits.[20] It argues that it has an obligation to perform its own evaluation of the claim. Again, however, the letters relied on by State Farm in support of summary judgment do not reflect what efforts State Farm took to evaluate Leibold's damages.

Taking all of the evidence together and drawing all inferences in favor of Leibold, issues regarding the reasonableness of State Farm's conduct remain. Therefore, summary judgment is not warranted as to Leibold's allegation that State Farm engaged in bad faith with regard to her request that State Farm waive any claim for reimbursement under the medical payment provisions in her policy.

**B.     Request to Bifurcate Trial**

State Farm alternatively "seeks to have the claims asserted by Leibold bifurcated in order to avoid prejudice and allow a just resolution of each claim."[21] The request for bifurcation stems from State Farm's reading of the complaint to include both a UIM breach of contract claim and a bad faith claim. While the court understands State Farm's confusion given the timeline of events and the wording used, the complaint does not contain a claim related to her UIM coverage and State Farm's offer. It cannot,

---

[19]Doc. 19-2 at p. 2.

[20]In arguing that her request for a medical payments claim waiver from State Farm was consistent with USAA's offer of the driver's policy limits, Leibold relies on *Schultz v. Travelers Indem. Co.*, 754 P.2d 265, 266-67 (Alaska 1988) (per curiam), which recognizes that if an insurance company believes there is a "substantial likelihood" that a person's claim may exceed its policy limits, then the insurance company has a duty to tender its policy limits as a settlement offer.

[21]Doc. 14 at p. 9.

because at the time the complaint was filed, State Farm had not yet offered to settle the UIM claim for $5,000.  Indeed, Leibold's response brief disavows any UIM claim against State Farm in the complaint as written.

### V.  CONCLUSION

Based on the preceding discussion, State Farm's motion for Summary Judgment at docket 13 is DENIED.  However, to the extent State Farm moves for a bifurcated trial, it may renew such a request in the event Leibold seeks and is granted leave to amend her complaint to include a claim related to her UIM coverage.

DATED this 17th day of May 2019.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT